# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DANIEL HOUSTON, | : | CIVIL NO. 1:10-CV-1964 |
| --- | --- | --- |
| Plaintiff, | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SUPERINTENDENT MICHAEL KLOPOTOSKI, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

**I.    Statement of Facts and of the Case.**

This is a *pro se* civil rights action brought by Daniel Houston, a state inmate who was previously confined at the State Correctional Institution (SCI) Dallas. Houston commenced this action by filing a 3-page civil complaint on March 29, 2010. (Doc. 1.) That complaint named the Superintendent at SCI Dallas, Michael Klopotoski, along with two prison care-givers, Patricia Ginocchetti, and Dr. Stanley Bohinski, as Defendants, and then alleged the following:

> "I'm a[sic] inmate under the care and concerns of the D.O.C. rules and regulations. Thats how they are involved. Superintendent M. Klopotoski is involved because he did not enforce D.O.C. rules an [sic] reglations [sic] regarding medical policies and the Director and Administrator Mr. S. Bohinski D.O. an [sic] Ms. Patricia Ginocchetti both denied medical car [sic] afte [sic] knowing I tore my right bicep at work. I want the courts to hear my case out an [sic] hold them responsible for their negligence."

(Id.)

On the basis of this spare assertion, Houston has lodged this complaint in federal court against these prison officials. The Defendants have responded to these allegations by filing motions to dismiss Houston's complaint (Docs. 7 and 10), arguing that Houston has not sufficiently articulated a cause of action against these prison officials in his terse filing. These motions have been fully briefed by the parties (Docs.7, 8, 10, 28, 29), and are now ripe for resolution.

For the reasons set forth below, it is recommended that the motions to dismiss be granted.

## II. Discussion

### A. Rule 12(b)(6)– The Legal Standard.

The Defendants have filed motions to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.

> 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court underscored that a trial court must assess whether a complaint states facts upon which

relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

> **B.** **Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.**

Liberally construed, the gravamen of Houston's complaint is that prison officials have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs. Houston faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Houston must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk

to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate

medical care in accordance with this standard, Houston is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted

to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir.

2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, it is also well-established that non-medical correctional staff like Superintendent Klopotoski may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

### C. Houston's Claims Should be Dismissed

Applying these constitutional benchmarks to this complaint it is apparent that, in its current form, Houston's complaint fails to state a claim upon which relief can be granted. Indeed, this complaint plainly fails for several reasons.

First, the complaint violates the pleadings rules prescribed by the United States Supreme Court in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. In fact, on its face, the complaint does not even contain "[t]hreadbare recitals of the elements of a cause of action". Rather, the complaint merely asserts, "negligence" by the defendants, a claim which as a matter of law does not state a civil rights violation in this factual context because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106.

Moreover, to the extent that the complaint is liberally construed to allege an Eighth Amendment violation, it is evident that the complaint in its current form does

not provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) Nor do Houston's "[f]actual allegations . . . raise a right to relief above the speculative level." Id. Indeed, Houston's complaint is almost wholly devoid of facts. It does not state when, where, or how this conduct is alleged to have taken place. It does not set forth well-pleaded facts identifying the alleged the roles of the Defendants in conduct. In fact, it makes no factual recitals whatsoever, leaving the Court only to speculate as to what the facts might be, something we cannot do.

While Houston's brief in response to the motions to dismiss suggests that there is a factual narrative to this case, (Doc. 29), it is well-settled that a party cannot amend a complaint through the filing of a brief. In fact, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); see also Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Therefore, the facts asserted in Houston's brief are not a substitute for well-pleaded facts in a complaint.

In any event, the facts recited in Houston's brief do not describe a colorable Eighth Amendment claim in this case. Those factual recitals indicate Houston suffered

an injury to his right bicep while working in the prison on November 7, 2008. (Id.) Houston was promptly seen and examined by prison medical staff following this injury, and was referred to an outside medical specialist for an examination on November 12, 2008. (Id.) During this examination, the outside specialist suggested an MRI examination as one form of diagnostic testing for this injury. (Id.) Ultimately, however, the prison regional medical director, Dr. Stanish, who is not named as a Defendant in this action, later reviewed Houston's case and determined that an MRI would not be beneficial. (Id., Ex. D-1.) Instead, medical staff placed Houston on temporarily disabled status as his bicep tear healed. (Id.)

On these facts, which are set forth in Houston's brief in response to these motions to dismiss, it is apparent that this matter simply involves a dispute between an inmate and his care-givers regarding the proper course of treatment for a muscle tear. However, an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same). Therefore, when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of care or treatment to prescribe for a particular ailment, prison

an injury to his right bicep while working in the prison on November 7, 2008. (Id.) Houston was promptly seen and examined by prison medical staff following this injury, and was referred to an outside medical specialist for an examination on November 12, 2008. (Id.) During this examination, the outside specialist suggested an MRI examination as one form of diagnostic testing for this injury. (Id.) Ultimately, however, the prison regional medical director, Dr. Stanish, who is not named as a Defendant in this action, later reviewed Houston's case and determined that an MRI would not be beneficial. (Id., Ex. D-1.) Instead, medical staff placed Houston on temporarily disabled status as his bicep tear healed. (Id.)

On these facts, which are set forth in Houston's brief in response to these motions to dismiss, it is apparent that this matter simply involves a dispute between an inmate and his care-givers regarding the proper course of treatment for a muscle tear. However, an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same). Therefore, when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of care or treatment to prescribe for a particular ailment, prison

officials are entitled to a judgment in their favor as a matter of law. Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008).

These principles are applicable here, and are fatal to Houston's Eighth Amendment claim. Accepting as true the factual assertions made by Houston in his brief, this case involves a dispute between this inmate, and a non-defendant medical provider, Dr. Stanish, regarding whether to perform an MRI examination. Such a dispute, which Houston himself simply characterizes as medical negligence, does not provide grounds for a constitutional claim.

Furthermore, to the extent that Houston's complaint simply sounds in negligence, rather than setting forth a constitutional claim, the dismissal of these constitutional claims dictates the appropriate course for the Court to follow in addressing any ancillary state law negligence or malpractice claims that Houston may wish to pursue against these Defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the Court has observed that the proper course is for:

> [T]he court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action

are dismissed, federal courts should not separately entertain pendent state claims).

Bronson v. White, No. 05-2150, 2007 WL 3033865, at *13 (M.D.Pa. Oct. 15, 2007)(dismissing ancillary malpractice claim against dentist).

This course of action, dismissing ancillary state negligence and malpractice claims when an inmate's Eighth Amendment claims fail as an matter of law, has also been expressly endorsed by the court of appeals in Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008). In Ham, the appellate court approved this practice, stating in terms that are equally applicable here that:

> Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).[1]

Id. at 151.

The remaining non-medical corrections Defendant named in the complaint is Superintendent Klopotoski who, according to Houston, has been included in the complaint solely because "Superintendent M. Klopotoski . . . did not enforce D.O.C.

---

[1] Because we believe that it would be inappropriate to exercise jurisdiction over these ancillary state law claims given our ruling on the merits of Houston's constitutional claim, we express no opinion on the merits of this case as a negligence or malpractice action.

rules an [sic] reglations [sic] regarding medical policies." (Doc. 1.) The grounds proffered by Houston in support of this complaint as to Superintendent Klopotoski cannot justify holding this particular Defendant personally liable for the torts alleged in the complaint. At the outset, Houston's assertions at to the prison superintendent are little more than a claim of *respondeat superior* liability, which has been expressly rejected by the courts. Thus, liability cannot be predicated against Defendant Klopotoski solely on the operation of *respondeat superior*. Instead, personal involvement by this Defendant must be shown through allegations of personal direction or of actual knowledge and acquiescence in the wrongs alleged in the complaint. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Such allegations of personal wrongdoing are wholly lacking here.

Furthermore, in a case such as this, where the inmate's complaints reflect that the prisoner received some level of medical care, non-medical correctional staff will not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), since:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this

> division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007); Flanyak v. Hopta, 410 F.Supp.2d 394 (M.D. Pa. 2006).

In short, without the inclusion of some further well-pleaded factual allegations, the constitutional claims set forth in this civil rights complaint contain little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, 127 S.Ct. at 1979. Therefore, we are compelled to recommend dismissal of this complaint.

We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Since the Plaintiff has failed to state a viable cause of action, and the factual and legal grounds proffered here in support of the complaint make it clear that the Plaintiff has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, this case should simply be dismissed.

## III. **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motions to dismiss (Docs. 7 and 10 ) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 6th day of October, 2010.

               ***S/Martin C. Carlson***
               Martin C. Carlson
               United States Magistrate Judge